Filed 10/24/14  In re Elijah P. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re ELIJAH P. et al., Persons Coming Under the Juvenile Court Law. | D065731 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>DOLORES P. et al.,<br><br>        Defendants and Appellants. | (Super. Ct. No. J517759A-B) |

APPEALS from orders of the Superior Court of San Diego County, Kenneth Medel, Judge.  Affirmed.

Cristina Gabrielidis, under appointment by the Court of Appeal, for Defendant and Appellant Dolores P.

Michele Anne Cella, under appointment by the Court of Appeal, for Defendant and Appellant Dennis P.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Paula J. Roach, Deputy County Counsel, for Plaintiff and Respondent.

Patricia K. Saucier, under appointment by the Court of Appeal, for Minors.

Dolores P. and Dennis P. (the parents) appeal orders terminating their parental rights to their children, Elijah P. and Rebekah P. (the children). Dolores contends the court erred by not continuing the Welfare and Institutions Code[1] section 366.26 hearing to allow her to be present and to allow time for the court to reassess the case after she participates in substance abuse treatment. She also asserts the court erred by not applying the parent-child relationship benefit exception of section 366.26, subdivision (c)(1)(B)(i), to adoption and termination of parental rights. Dennis maintains the court erred by not applying the parent-child relationship benefit exception. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On March 15, 2010, the San Diego County Health and Human Services Agency (the Agency) petitioned on behalf of then seven-year-old Elijah and one-year-old Rebekah, under section 300, subdivision (b), based on recurring domestic violence between Dolores and Dennis. The children were taken into protective custody after a domestic violence incident in Elijah's presence. There had been at least 10 previous incidents of domestic violence between the parents. Dennis said he and Dolores fought every day. He blamed her for most of their altercations.

---

[1] Statutory references are to the Welfare and Institutions Code.

The court assumed jurisdiction, declared the children dependents of the court, removed them from parental care, placed them with a relative and ordered reunification services. The children were placed with their maternal grandmother (the grandmother). The court allowed Dolores to have overnight visits at the grandmother's home. It issued a one-year restraining order protecting Dolores from Dennis. At the six-month review hearing in October 2010, the court vacated the restraining order, and ordered six more months of services.

In February 2011, at Dolores's request, the court issued a new restraining order. There had been more domestic violence between the parents and the court learned the grandmother was allowing the children to live with Dolores. The Agency petitioned under section 387, seeking removal. The court found the allegations true and ordered the children placed in foster care. At the 12-month hearing in June, it continued services.

During the following months, Dolores and Dennis participated in services and had unsupervised visits with the children. At the 18-month hearing in November 2011, the court found the parents had made substantive progress and ordered placement with Dolores. She and the children began living in the grandmother's home.

In March 2012, police were called to the home when Dolores and a maternal uncle were involved in a heated argument. The police officer observed Dolores appeared to be a drug user. She and the children left the grandmother's home. Dennis was homeless. The parents attended conjoint therapy sessions, but did not make progress, and Dolores stopped going to therapy. In June, the court continued placement with Dolores and ordered her to drug test. She tested positive for methamphetamine in October 2012. The

3

children had been living with both parents in various motels, and then moved into a house. In December, the court continued placement with the parents, continued services and ordered Dolores to begin drug abuse treatment. She had another positive methamphetamine test.

The situation worsened. Dolores stopped drug treatment, did not drug test and was terminated from drug court. The parents engaged in domestic violence and were not paying rent. Their electricity was shut off, and the landlord threatened to turn off the water. There were reports of people coming and going from the residence at all times and the children begging for food. Dolores's adult son said Dennis drank every night and the parents continued to fight in front of the children. Dennis said he had been suspended from work and was living in his car.

In April 2013, the Agency petitioned again under section 387, alleging the parents could not provide adequate care for the children. The children were detained, and the court found the allegations true. Meanwhile, the parents continued to argue, and police were called numerous times to the home.

Dennis visited the children regularly and they were always happy to see him. Dolores missed visits and rarely called. She was arrested on an outstanding warrant, and Dennis said she had stolen his car. By July 2013, the parents had reconciled. Dolores admitted to using drugs, but said she was not ready for drug treatment and was unwilling to begin treatment without a guarantee the children would be returned. Elijah was protective of Dolores and aggressive toward Rebekah. He said he wanted to visit both

4

parents together and he wanted to go home. Rebekah appeared worried and had nightmares every night. With therapy, the children showed improvement.

At the August 1, 2013, disposition hearing on the section 387 petition, the court found returning the children to the parents would be detrimental, removed the children from parental care, terminated services and set a section 366.26 hearing to determine a permanent plan. In February 2014, the court summarily denied Dennis's section 388 petition by which he sought the children's return.

The social worker assessed the children as adoptable and said their foster parents had an approved home study and were committed to adopting them. The social worker reported the parents had been evicted from their home for not paying rent and Dennis was living separately from Dolores. Dennis said he was not ready for placement of the children because he needed time to find proper housing, a job and a car. During his conversation with the social worker, Dennis became angry and raised his voice. In March 2014, he reenrolled in a domestic violence program.

When the social worker told Elijah he could not be returned home, he cried and said he did not want to be adopted because he was afraid he would no longer see Dennis. When the social worker later told him his foster parents wanted to adopt him and Rebekah, Elijah said he had thought about permanent plans and had decided, "If Rebekah is going to have a permanent plan of adoption, then I also want to be adopted." He said his first choice was to be with his parents, but if that was not an option, he wanted to be adopted with Rebekah.

5

At the section 366.26 hearing on April 3, 2014, Elijah testified out of Dennis's presence. He said he was 11 years old. He wanted the court to select adoption for him so he could stay with Rebekah and his foster parents, but he would rather live with the parents. He understood it would be the foster parents' decision whether he would visit the parents. He was afraid Dennis would be mad at him for choosing adoption.

After Elijah's testimony was read back to Dennis, Dolores's counsel asked for a continuance to allow Dolores to be present and for a one-month continuance to allow reassessment of the case because Dolores was attempting to enter drug treatment. The court denied the request.

The social worker testified Dennis had consistent visits with the children, the children loved him and they played together, but he was not always appropriate. Dolores had not visited on a consistent basis and had not seen the children for two months.

Dennis testified he had been employed for two weeks and had restarted domestic violence treatment. He said Rebekah spoke to him about returning to live with him. He said he had not contacted Dolores for one month and had filed for divorce, he did not believe the conflict and instability in his life would continue, and Elijah told him not to worry because things would work out and they would be together again.

After considering the evidence and argument by counsel, the court terminated parental rights and ordered adoption for the children. It found the children were adoptable and there were no statutory exceptions to termination of parental rights and adoption. It found the domestic violence between the parents had not been resolved, the children would not be harmed by severing their relationships with Dolores, and, although

6

they would benefit by continuing their relationships with Dennis, they would not be greatly harmed by termination of parental rights, and the benefits of adoption far outweighed the benefits of maintaining the parent-child bond.

DISCUSSION

I. *The Court's Denial of Dolores's Requests to Continue the Section 366.26 Hearing*

Dolores contends the court abused its discretion by not continuing the section 366.26 hearing so she could attend. She also argues the court should have delayed the hearing for one month to allow time to reassess the case after she participates in drug abuse treatment.

The juvenile court may grant a continuance only on a showing of good cause. "[T]he court shall give substantial weight to a minor's need for prompt resolution of his or her custody status . . . ." (§ 352, subd. (a).) "Continuances are discouraged [citation] and we reverse an order denying a continuance only on a showing of an abuse of discretion [citation]." (*In re Ninfa S.* (1998) 62 Cal.App.4th 808, 810-811.)

The court did not abuse its discretion by denying Dolores's requests to continue the hearing. Dolores's counsel did not specify why Dolores was not present in court on the day of the section 366.26 hearing or how long it would take to secure her presence. Also, it was unknown how long it would take for her to begin drug abuse treatment and make progress. Counsel said only that Dolores was on a waiting list at two drug treatment facilities and was in the process of making an appointment at another.

Moreover, Dolores does not indicate what information she could have provided which the court needed to make its determination. Her potential progress in drug

7

treatment would not have been relevant to the section 366.26 hearing where the court was required to determine whether the children were adoptable and whether any statutory exceptions were present to preclude termination of parental rights.

Elijah and Rebekah had changed placements and residences numerous times during the past four years, and Dolores had not been visiting them. Reunification services had been offered to her, but she lied about her drug addiction and did not take advantage of the services offered. Even if Dolores were able to begin substance abuse treatment and make progress in dealing with her drug addiction, she still would not have shown she had overcome her problems with domestic violence. Section 352, subdivision (a), requires the court to give great weight to "a minor's need for prompt resolution of his or her custody status." Dolores has not shown an abuse of discretion by the court denying her requests to continue the hearing.

*II. The Beneficial Parent-Child Relationship Exception to Termination of Parental Rights and Adoption*

Dolores and Dennis contend the court erred by finding the beneficial parent-child relationship exception of section 366.26, subdivision (c)(1)(B)(i), did not apply to preclude termination of parental rights and adoption of the children. Dolores argues the court should not have chosen adoption for the children because they were bonded to her. Dennis maintains the exception applies because he had regular and consistent contact with the children, and they would benefit by continuing their relationships with him. Dennis argues the strength of their bonds with him outweighs the benefits they would

8

gain from adoption. In support of their arguments, both parents point to Elijah's statements he did not want to be adopted.

Adoption is the permanent plan favored by the Legislature. (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 573.) If the court finds by clear and convincing evidence that a child is adoptable, it becomes the parent's burden to show that termination of parental rights would be detrimental to the child because of a specified statutory exception to termination of parental rights and adoption. (*Id*. at p. 574.) Under the exception found in section 366.26, subdivision (c)(1)(B)(i), the parent is required to show termination would be detrimental in that " '[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship.' " In *In re Brandon C.* (1999) 71 Cal.App.4th 1530, 1534, the court noted "[c]ourts have required more than just 'frequent and loving contact' to establish the requisite benefit for [the] exception."

In reviewing whether there is sufficient evidence to support the trial court's finding, the appellate court reviews the evidence in the light most favorable to the court's order, giving the prevailing party the benefit of every reasonable inference and resolving all conflicts in support of the order. (*In re Autumn H., supra,* 27 Cal.App.4th at p. 576.) For the beneficial parent-child exception to apply, the parent-child relationship must promote "the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents." (*Id.* at p. 575.) "[T]he court balances the strength and quality of the natural parent/child relationship in a

tenuous placement against the security and the sense of belonging a new family would confer." (*Ibid.*)

*A. The Court's Finding the Beneficial Parent-Child Relationship Exception did not Apply to Dolores's Case*

Dolores did not show the court erred by not applying the beneficial parent-child relationship exception in her case. She did not maintain regular visitation and contact with the children. After they were removed from her care the second time, her visits were sporadic and her calls infrequent. She had little contact with them from June 2013 to April 2014, and at the time of the hearing had not seen them for two months.

Substantial evidence supports the finding Dolores did not show the children would be greatly harmed by termination of her parental rights. The children recognized her as their mother and looked forward to her visits, but they had adjusted well to their foster care placement and showed no distress when separating from her when visits ended. Although Elijah said he would prefer to live with the parents, he said he was comfortable with his foster parents deciding whether he would continue to see them and he wanted the court to order adoption if he could not go home. Substantial evidence supports the finding the children would not be greatly harmed if parental rights were terminated.

The court did not err by finding the benefits of adoption outweighed the benefits of continuing Dolores's parent-child relationships with the children. The children had spent four years as dependents of the court. Dolores had stopped having regular and consistent contact with them, she was abusing drugs and she had not resolved the domestic violence issue with Dennis. The court weighed Elijah's wish to live with his

10

parents against the children's need for a safe, consistent, permanent home. Dolores has not shown error in the court's determination the beneficial parent-child exception did not apply.

*B. The Court's Finding the Beneficial Parent-Child Relationship Exception did not Apply to Dennis's Case*

Dennis did not show the court erred by not applying the beneficial parent-child relationship exception to him. The court found Dennis had maintained regular visitation and contact with the children, and they had a good relationship with him and would benefit by continuing the relationship. Significantly however, the court also found the children would not be severely harmed were the relationship terminated, and the benefits of adoption clearly outweighed the benefits of continuing the relationships.

By the time of the section 366.26 hearing, Elijah and Rebekah had been living with the foster parents for six months and had formed positive relationships with them. Although they had strong bonds with Dennis, they would not suffer severe detriment if those bonds were severed. When visits with Dennis were over, both children separated easily from him and returned to the foster home. When adoption was first discussed with Elijah, he was sad and worried about not seeing Dennis any more, but by the time of the hearing, he had decided he wanted the court to choose adoption if he could not live with the parents. At the hearing, he told the judge he wanted to be adopted along with Rebekah, he liked his foster home, and it would be alright for the foster parents to decide whether he could see Dennis.

11

The court balanced the benefits of maintaining the parent-child relationship against the benefits of stability and security the children would gain by adoption. The evidence showed the children were safe and happy with the foster parents. They had lived with the anger and domestic violence of the parents for a long time and had been in tenuous placements during the dependency period. The court noted Dennis had been provided with extensive services. He already had completed a 52-week domestic violence program, but had just started over with a new 52-week program to deal with his continuing anger problem and domestic violence. In April 2013 and again in February 2014, Dennis acknowledged he was not yet ready to have the children in his care and they were better off in foster care. The court considered Elijah's wishes to live with the parents, his feelings toward the prospective adoptive family and the children's need for safety and stability in an adoptive home. The court's decision the benefits to the children of adoption outweighed the benefits of maintaining their parent-child relationship with Dennis is well supported.

DISPOSITION

The orders are affirmed.

_____

                                    IRION, J.

WE CONCUR:


_____

McDONALD, Acting P. J.


_____

O'ROURKE, J.